1

cal_____

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10  MICHAEL PATRICK FELIX            )    Civil No. 06cv1199 JM (AJB)
                                     )
11                  Petitioner,      )
    v.                               )    Report and Recommendation Denying
12                                   )    Petitioner's Habeas Corpus Petition
    JAMES E. TILTON, Acting Secretary of the  )  [Doc. No. 7]
13  California Department of Corrections and   )
    Rehabilitation,                  )
14                                   )
                    Respondent.      )
15  _____ )

16        Petitioner Michael Felix (hereinafter "Petitioner), a state prisoner proceeding *pro se*, filed a Petition

17  for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his June 24, 2004 conviction in San

18  Diego Superior Court Case No. SCD 173754 for committing a lewd act upon a child, attempting to commit

19  a lewd act upon a child and child molestation.  Respondent filed an answer on August 19, 2006.  [Doc. No.

20  6].  Petitioner's Traverse was to be filed on or before September 21, 2006, however, as of the date of this

21  Order, the Petitioner has not filed a traverse or requested any extension of time in which to do so.  Based

22  upon a review of the record, it is recommended that the Petition be **DENIED**.

23                              ***Procedural History***

24        On June 24, 2004 in San Diego County Superior Court Case No. SCD 173754, a jury convicted

25  Petitioner of six counts of committing a lewd act upon a child (counts 1, 2, 3, 4, 5, 21; Cal. Penal Code §

26  288(a)), six counts of attempting to commit a lewd act upon a child (counts 10, 13, 14, 22, 23, 24; Cal Penal

27  Code § 664/288(a)), and twelve counts of child molestation (counts 6, 7, 8, 9, 11, 12, 15, 16, 17, 18, 19, 20;

28  Cal. Penal Code § 647.6(a).  [Lodgment 5 at 1-2].  The jury found that Petitioner committed the lewd acts

in counts 1, 2, 3, 4, 5, and 21, against multiple victims within the meaning of the One Strike Law (Cal. Penal Code § 667.61(b), (c), (e)), and that these crimes involved substantial sexual conduct within the meaning of Cal. Penal Code § 1203.066(a)(8). [Lodgment 1 at 441-64]. On September 20, 2004, the trial court sentenced Petitioner to 60 years to life consisting of four consecutive 15-years-to-life terms for counts 1, 3, 5, and 21. [Lodgment 1 at 508-09].

On October 18, 2004, Petitioner filed a notice of appeal from judgment. [Lodgment 1 at 501]. On December 21, 2005, the California Court of Appeal denied Petitioner's appeal and affirmed the judgment in all respects. [Lodgment 5].

On January 23, 2006, Petitioner filed a petition for review in the California Supreme Court. [Lodgment 6]. Petitioner stated three grounds for relief: (1) there was insufficient evidence to support his convictions for attempting to commit a lewd act upon a child as charged in counts 10, 13, 14, 23, and 24; (2) imposition of four consecutive terms of 15-years-to-life for committing the lewd acts in this case violated California's constitutional prohibition against cruel or unusual punishment; and, (3) imposition of four consecutive terms of 15-years-to-life for committing the lewd acts violated the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. [Lodgment 3 at 15-28]. On March 1, 2006, the California Supreme Court denied the petition for review without comment. [Lodgment 7].

On June 7, 2006, Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court presenting the same three claims the Petitioner raised in his state court petitions. [Petition at 1 and 6-8]. In an Order filed June 23, 2006, this Court ordered Respondents to respond and file an answer to the Petition on or before August 21, 2006 and Petitioner to file a traverse on or before September 21, 2006. [Doc. No. 4]. On August 18, 2006, Respondent filed an answer. Petitioner has not filed any traverse or request for extension of time in which to do so.

### ***Factual Background***[1]

Petitioner, who suffers from cerebral palsy, was between 26 and 27 years old at the time of the

---

[1] The factual background is taken from the Factual Background of the California Court of Appeal's unpublished opinion [Lodgment 4 at 2-8] but is limited to the facts relevant to this discussion.

commission of the sexual offenses in this case against five male children between the ages of 10 and 13 in the Poway school district. He generally met the children through contacts at the local elementary schools where he performed yard duties on school grounds and gave presentations to classrooms regarding living with a disability, or through friends who introduced the boys to him. Petitioner often would have the boys over to his apartment to initially play video games and eventually would show them pornographic videos and masturbate in front of them before asking if he could touch their private areas or engage in acts of oral copulation. [Lodgment 5 at 2].

Because Petitioner challenged the sufficiency of the evidence to support his five convictions for the attempted commission of lewd acts on a child as alleged against three of the boys, the Court of Appeal only recited the facts presented at trial regarding those counts in full and summarized the evidence regarding the unchallenged convictions.

I. **Events Involving Michael K. (Counts 1 through 9)**

Michael K., who was 13 years old at the time of trial, testified he had met [Petitioner] when he was in the 5th grade and [Petitioner] was a playground attendant at his school. Over the course of two years, Michael would frequently go over to [Petitioner's] apartment to hang out, play video games or watch television and [Petitioner] would take him out for sodas or fast food. Many times [Petitioner] would play porn movies and masturbate while Michael was there. [Petitioner] often encouraged Michael to masturbate with him, saying it would feel good. Michael was instructed by [Petitioner] not to tell anyone because he could get into trouble and go to jail. [¶] Sometimes, while the porn movies were playing, [Petitioner] would ask if he could touch Michael's penis. When Michael refused, [Petitioner] would try to convince him otherwise. Three times, [Petitioner] successfully reached into Michael's pants to touch Michael's penis over his underwear. Other times, [Petitioner] touched Michael's crotch area over his outer clothing. [Petitioner] also often opened Michael's pants and touched his bare penis while he was masturbating. [Petitioner] orally copulated Michael several times both over his clothing and directly on his penis. While sucking on his penis, [Petitioner] would masturbate. [Petitioner] convinced Michael to orally copulate him at least one time. [Lodgment 4 at 3].

II. **Events Involving Eric O. and Collin K. (Counts 10 through 12)**

Eric O. first met [Petitioner] when he was 11 years old and in the 5th grade and [Petitioner] came to his school and did a presentation on living with a disability. Eric later saw [Petitioner] at a fair in Old Poway Park and invited him to his graduation. The next year, Eric met [Petitioner] again on the Transit, which he was required to take home from school. At [Petitioner's] request, they exchanged telephone numbers so they could hang out. That weekend, [Petitioner] called and invited Eric to go to a park. Eric, who was playing with a 4th grade friend named Collin K. at the time of the call, subsequently met [Petitioner] at the Old Poway Park. After introducing Collin to [Petitioner], the three hung out playing with some cell phones [Petitioner] had with him and then he gave the boys a tour of the trains at the park. [¶] The next morning, Collin suggested to Eric that they call [Petitioner] to see if he wanted to hang out again. He agreed and the three met at a different park and walked to a nearby Taco Bell where [Petitioner] bought them

sodas.  The group then made arrangements to meet later that afternoon after going back home for awhile. [Petitioner] gave Eric one of the cell phones so they could keep in touch.  Later, [Petitioner] called Eric and they agreed to meet at the library and then go to some manmade drainage tunnels nearby.  At some point during the weekend, as Eric and [Petitioner] were waiting for Collin, [Petitioner] asked Eric whether he ever played with himself.  When Eric indicated he did not understand the question, [Petitioner] pulled out his cell phone, extended the antenna and demonstrated how to masturbate using an up-and-down motion with his hand circled around the antenna. [¶] Later, when Eric and [Petitioner] walked to the tunnels and went inside, [Petitioner] asked whether Eric would mind if he stopped to play with himself.  When Eric said, "okay," [Petitioner] unzipped his pants and began masturbating as Eric continued to explore the tunnel area.  [Petitioner] eventually asked Eric to come over by him and asked Eric, "Can I play with yours?"  When Eric declined, [Petitioner] then asked, "Well, do you mind if I suck it?"  When Eric again refused, [Petitioner] offered him $20 if he allowed him to suck on his penis.  Eric refused yet again and asked [Petitioner] if he were finished.  Two minutes later, [Petitioner] said, "Okay.  Let's go," zipped up his pants and the two walked further down the tunnel before leaving to meet up with Collin who had just called to arrange to meet them at the park. [¶] When they all met, they decided to go to Collin's house and Eric left to take his bike home.  As Collin and [Petitioner] walked alone toward Collin's house, [Petitioner] asked him whether he ever played with his "dick."  Although [Petitioner] then asked him another question when he answered "no," Collin could not remember the specific content of the second question.  Collin remembered [Petitioner] told him not to tell anyone about their conversation after asking him the questions.  Collin also recalled talking about the matter to a woman in a room, that the conversation was videotaped, and that he also told the woman about a man who wanted to touch his penis.  [¶] At trial, the prosecution played the videotaped interview to which Collin referred and the social worker who interviewed him testified Collin had told her [Petitioner] had wanted to touch Collin's penis and had asked whether he had ever played with his own penis and whether [Petitioner] could see his penis. [¶] In statements given to detectives investigating the matter, [Petitioner] admitted to stroking his penis in front of Eric and offering him money to be able to play with Eric's penis. [Petitioner] also admitted he had offered a lot of people money for acts such as masturbation and sucking on their penises.  He claimed he asked these questions only to get a reaction from the people.  [Lodgment 4 at 4-6].

III.   Events Involving David H. (Counts 13 through 18)

David H. was 12 or 13 years old when he first met [Petitioner] at [Petitioner's] apartment through his friend Michael K.  After visiting [Petitioner's] apartment several times, David observed [Petitioner] playing porn videos with other young boys, including Michael, present.  During his numerous visits to [Petitioner's] over the course of several months, the porn videos were playing almost every time and while they were playing [Petitioner] would pull out his penis and masturbate in front of David, encouraging him to do so as well. [Petitioner] told David he should masturbate because "it feels good."  David saw [Petitioner] ejaculate once. [¶] On two or three occasions, [Petitioner] asked if he could suck David's penis while he was masturbating.  On two to six different occasions, [Petitioner] asked whether he could rub or touch David's penis while he masturbated. [Petitioner] continued to try and convince David it would feel good even though David refused his requests.  In an effort to persuade David to allow him to touch him, [Petitioner] told David that his friend Michael had allowed him to do so and that Michael liked it. [Petitioner] told David not to tell anyone about these incidents. [Lodgment 4 at 6].

IV.   Events Involving Matthew S. (Counts 19 through 24)

Matthew S. was introduced to [Petitioner] by a friend of his when he was 10 years old and in the 4th grade at school. The friends were playing at Matthew's apartment complex, which was across the street from [Petitioner's] apartment. After several days, [Petitioner] started bringing Matthew sodas and Matthew started going to [Petitioner's] apartment as often as three times a week. As Matthew continued to visit the apartment, [Petitioner] began playing movies that had naked adults engaging in sexual activity. Matthew saw these porn movies at least four times though they were playing almost every time he went to [Petitioner's] apartment. [Petitioner] made Matthew uncomfortable when he would frequently play with his penis and masturbate in front of him on the bed while the movies were playing. Matthew saw [Petitioner] ejaculate several times. [¶] Sometimes when Matthew was at the apartment, [Petitioner] would touch Matthew's "privates" over his clothes. On one occasion, when [Petitioner] reached toward him, Matthew backed away, preventing [Petitioner] from actually touching him. [Petitioner] also tried to touch Matthew's penis under his clothing by reaching into his pants. He further told Matthew to take his penis out of his pants and encouraged him to play with himself. [¶] [Petitioner] twice asked to suck on Matthew's penis. One request was made while a porn movie was playing. [Petitioner] also asked Matthew to touch his penis with his hand and asked on more than one occasion to touch Matthew's penis. When these events occurred, [Petitioner] directed Matthew not to tell anyone about them. On several occasions other young boys Matthew's age were also in the apartment when [Petitioner] engaged in these acts upon Matthew. [Lodgment 4 at 6-7].

V.   **Corroborative Evidence**

The prosecution also presented testimony from two former roommates of [Petitioner's] who testified about their concern that [Petitioner] had young boys over at the apartment. One even told [Petitioner] that it was not appropriate for the boys to be there and had told him the boys needed to leave when the roommate found them there when he came home. On one occasion, the roommates came home to find [Petitioner] on the couch under a blanket in his underwear with a young boy appearing to be in 4th or 5th grade of school in the kitchen. [Petitioner] appeared surprised when the roommates came in and told them he was dressed that way because it was warm in the apartment. [¶] One of the roommates testified that when he returned to the apartment on several other occasions, he also found young boys there with [Petitioner] and porn movies on the VCR in the bedroom. The roommate remembered coming into the apartment one time when [Petitioner] was babysitting a young boy six or eight years old and found them sitting together on the couch in their underwear under a blanket watching television. [¶] Uncharged acts evidence was also admitted at trial through the testimony of Michael K.'s younger brother Tyler K. Tyler often would go with his brother to [Petitioner's] apartment to hang out. On at least three occasions, Tyler spent the night at [Petitioner's] apartment with his brother and he would sleep on the couch while Michael was with [Petitioner] in the bedroom watching videos that Tyler was not allowed to watch. One time when Tyler was coming out of the bathroom at the apartment, [Petitioner] asked whether he could see Tyler's "winky," meaning penis. [Petitioner] asked Tyler at least three time to see his penis and told him his brother had let him see his. [Lodgment 4 at 7-8].

### _Legal Standard_

I.   **_Standard of Review_**

The instant petition is governed by 28 U.S.C. § 2254(d) which provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### A.    Contrary To or Unreasonable Application of Clearly Established Federal Law

In interpreting the provisions of 28 U.S.C. § 2254(d)(1), the Supreme Court has held that the terms "contrary to" and "unreasonable application of" have distinct meanings. A state court's decision is "contrary to" clearly established federal law if it fails to apply the correct controlling authority, or if it applies the correct controlling authority to a case involving facts that are materially indistinguishable from those in a controlling case, but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). In order for a petitioner to prevail under a claim that the state court's decision was "contrary to" clearly established federal law, the state court's finding must have been "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established federal law. *Id.* at 405-06.

A state court's decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of that case. *Williams*, 529 U.S. at 413. The "unreasonable application" clause requires the state court decision be objectively unreasonable, not just incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 65 (2003) (citing *Williams v. Taylor*, 529 U.S. at 409-10, 412). A federal court reviewing a petition under § 2254, therefore, "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410. Instead, there must be a determination that the underlying state court decision was not only wrong, but was also unreasonable. *Id.*

### B.    Unreasonable Determination of Facts

Alternatively, a federal court may grant habeas relief where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). In federal habeas proceedings, a state court's factual determinations

1 are presumptively correct. 28 U.S.C. § 2254(e)(1); *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984).

2 The petitioner must prove the state court's factual findings were erroneous by clear and convincing

3 evidence.  28 U.S.C. § 2254(e)(1).  *See also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir. 2004).

4 Mixed questions of fact and law are reviewed under the "contrary to" and "unreasonable application"

5 clauses in 28 U.S.C. § 2254(d)(1).  *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004).  A state

6 court's factual findings underlying its conclusion on mixed issues are accorded a presumption of

7 correctness. *Id.*

8        **C.**      ***Look Through Doctrine***

9      "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

10 orders upholding the judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

11 *Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In the instant case, the California Supreme Court denied the

12 Petitioner's appeal silently.  [Lodgement 7].  Thus, the Court will look through that decision to the last

13 reasoned opinion from the California Court of Appeal to determine whether the decision was contrary to

14 or involved an unreasonable application of clearly established federal law.

15 **II.**    ***United States Supreme Court Precedent***

16        **A.**      ***Sufficiency of the Evidence***

17      Sufficiency of the evidence claims are controlled by the United States Supreme Court decision in

18 *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In *Jackson*, the Court held that the Fourteenth Amend-

19 ment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found

20 that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

21 beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.  Once a state court fact finder has found a

22 defendant guilty, federal habeas courts must consider the evidence "in the light most favorable to the

23 prosecution." *Id.* at 319.  Federal habeas courts must also analyze sufficiency of the evidence claims

24 "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

25 at 324 n.16.

26        **B.**      ***Cruel and Unusual Punishment***

27      The Eighth Amendment's prohibition on cruel and unusual punishment as applied to sentences is

28 governed by a grossly disproportionate standard.  In *Rummel v. Estelle*, the Court held that the "Eighth

1 Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the

2 crime." 445 U.S. 263, 271 (1980). The Supreme Court reiterated the same standard in the more recent

3 cases of *Ewing v. California*, 538 U.S. 11 (2003) and *Lockyer v. Andrade*, 538 U.S. 63 (2003). In

4 *Ewing*, the Court found that a sentence of 25-years-to-life under California's three strikes law, where the

5 third strike was a petty theft, did not violate the Eighth Amendment. *Ewing*, 538 U.S. at 20-21. The

6 Court emphasized that state legislatures are free to enact policy choices such as severe recidivist

7 offender laws and that California's three strikes law was not grossly disproportionate to the severity of

8 the crime. *Id.* In *Lockyer*, the Court upheld a sentence of 50-years-to-life under California's three

9 strikes law, where the petitioner's third strike was a theft with a prior. *Lockyer*, 538 U.S. at 77.

10

11 ***Discussion***

12 **I.    *The State Court's Decision Was Not Contrary To or An Unreasonable Application of Clearly Established Federal Law Nor Did the State Court Make an Unreasonable Determination of***
13 ***the Facts in Light of the Evidence Presented to State Court***

14          Petitioner exhausted all three claims by presenting them to the California Supreme Court in his

15 habeas petition [Lodgment 6], which was denied without comment or citation. [Lodgment 7]. Where the

16 California Supreme Court issues a silent denial, such a denial is a ruling on the merits. *Hunter v.*

17 *Aispuro*, 982 F.2d 344, 347-49 (9th Cir. 1992). Thus this Court will look to the last reasoned state court

18 decision to determine whether the state court's determination on the merits of claim was contrary to, or

19 involved an objectively unreasonable application of, clearly established federal law as set forth by the

20 United States Supreme Court. The last reasoned state court decision addressing the claims Petitioner

21 raised was the state court of appeal's denial of Petitioner's direct appeal. [Lodgment 5].

22          **A.    *Ground One: Sufficiency of the Evidence***

23          In ground one, Petitioner claimed that the evidence presented at trial was insufficient for the jury

24 to convict him of five counts of attempted lewd and lascivious acts with a child. Specifically, he

25 claimed that there was no evidence demonstrating that he committed an act in furtherance of the attempt

26 as required under California law. [Petition at 6]. The state court applied the substantial evidence

27 standard of review to the sufficiency of the evidence claim and rejected Petitioner's claim. [Lodgment 5

28 at 9]. *See People v. Crittenden,* 9 Cal. 4th 83, 139 n.13 (1994). California's substantial evidence

8

1  standard of review mirrors the standard set forth in the Supreme Court decision, *Jackson v. Virginia*.

2  *See People v. Cuevas*, 12 Cal. 4th 252, 260-61 (1995); *People v. Johnson*, 26 Cal. 3d 557, 578 (1990).

3  Thus, this Court will examine the evidence presented to determine if any rational trier of fact

4  could have found the essential elements of the crime beyond a reasonable doubt.

5  In California, in order to prove the crime of commission of a lewd act on a child, each of the

6  following elements must be proved: 1) a person touched the body of the child; 2) the child was under 14

7  years of age; and, 3) the touching was done with the specific intent to arouse, appeal to, or gratify the

8  lust, passions, or sexual desires of that person or the child.  Cal. Penal Code § 288(a); *see also* CALJIC

9  No. 10.41.  An attempt to commit a lewd act on a child occurs when there is specific intent to commit

10  such crime and a direct but ineffectual act is done towards its commission.  *People v. Dillon*, 34 Cal. 3d

11  441, 452-53 (1983); CALJIC Nos. 6.00, 10.41.  After establishing specific intent, California law only

12  requires that the Petitioner perform some act, no matter how slight, that went beyond mere preparation.

13  *People v. Memro*, 38 Cal. 3d 658, 698-99 (1985).

14  The Court of Appeal reviewed the record and found that Petitioner clearly had the specific intent

15  to commit lewd acts.  Petitioner had an established method of befriending young boys between the ages

16  of 9 and 13, gaining their trust, and inviting them to this apartment or other places to hang out or play.

17  The record demonstrated that Petitioner established a sexually preoccupied environment in which he

18  showed his young victims pornographic materials, openly talked about masturbation, masturbated in

19  front of them, and invited the boys to do likewise.  He propositioned the young boys to let him sexually

20  or orally copulate them.  With this course of conduct in evidence revealing Petitioner's clear intent to

21  commit lewd acts with young boys, the jury could have reasonably inferred  that but for the victims'

22  refusals to Petitioner's requests and advances after each was respectively isolated with Petitioner, the

23  lewd conduct would have occurred.  The evidence permitted a jury to reasonably conclude that

24  Petitioner's conduct went beyond mere preparation and constituted immediate steps in the present

25  execution of the criminal design.  Accordingly, overwhelming evidence supported the jury's verdict.

26  The state appellate court's factual determinations were not unreasonable in light of the evidence

27  presented at trial.  The court properly applied the correct standard under *Jackson* and its conclusions are

28  presumably correct under 28 U.S.C. § 2254(e).

**B.      Ground Two: Cruel and Unusual Punishment in Violation of the California Constitution**

In ground two, Petitioner claimed that his sentenced violated the California Constitution's prohibition against cruel and unusual punishment.  [Petition at 7].  28 U.S.C. § 2254(a) limits a federal court's ability to review habeas petitions to violations of the Constitution or laws or treaties of the United States.  This claim is not properly before this Court because it asserts a deprivation under the state constitution rather than the federal constitution.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating that it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

**C.      Ground Three: Cruel and Unusual Punishment in Violation of the Eighth Amendment**

In ground three, Petitioner claimed that his sentence of four consecutive 15-years-to-life terms for counts 1, 3, 5, and 21 violated the Eighth Amendment's prohibition of cruel and unusual punish-ment.  Specifically, Petitioner argued that a sentence of 60-years-to-life is grossly disproportionate for the crimes he committed given that he suffers from cerebral palsy and has the mental capability of a young boy.  [Petition at 7-8].

The California Court of Appeal observed that Petitioner was sentenced under the One Strike Law (Cal. Penal Code § 667.61(b), (c), (e)(5)).  In discussing Petitioner's federal claim for cruel and unusual punishment, the court reasoned that because the federal proportionality analysis closely resembles California's *Lynch* analytical framework, a punishment that satisfies the California standard also necessarily satisfies the federal standard. [Lodgment 5 at 23].  The California test for what constitutes cruel and unusual punishment is whether the punishment is "out of all proportion to the offense . . . so as to shock the conscience and offend fundamental notions of human dignity."  *In re Debeque*, 212 Cal. App. 3d 241, 249 (1989) (quoting *Robinson v. California*, 370 U.S. 660, 676 (1962) and citing *In re Lynch*, 8 Cal. 3d 410, 424 (1972)).  The burden is on the defendant to establish that his punishment is greater than that imposed for more serious offenses in California and that similar offenses in other states do not carry punishments as severe.  *Debeque*, 212 Cal. App. 3d at 254-55.  The court further noted that successful challenges to proportionality are an "exquisite rarity."  *People v. Weddle*, 1 Cal. App. 4th

1190, 1196 (1991).  The court also referenced the companion Supreme Court cases *Ewing v. California*[2]

and *Lockyer v. Andrade*[3], which held lengthy indeterminate life sentences imposed under California's

three strikes law for recidivist criminals, did not violate the Eighth Amendment, and that Petitioner's

lengthy sentence under California's one strike law was not unconstitutionally disproportionate.

[Lodgment 5 at 23-24].

The California Court of Appeal applied the correct standard under the Supreme Court's Eighth

Amendment jurisprudence.  Since the federal proportionality standard offers no greater protections than

that provided by the California proportionality standard under *Lynch*, the Court of Appeal's findings that

the Petitioner did not meet his burden under *Lynch* was correct.  [Lodgment 5 at 20].  Furthermore, the

Court of Appeal's analogous reasoning to the companion Supreme Court cases of *Ewing* and *Lockyer*

was proper in light of the fact that those cases were dealing with lengthy sentences under California's

three strikes law and here Petitioner is appealing his sentence under California's one strike law.

[Lodgment 5 at 23-24].  A legislature is entitled to enact laws which proscribe more severe punishments

those offenders who commit lewd acts on multiple child victims.  *See Ewing,* 538 U.S. at 20-21.

Petitioner has not shown that four 15-years-to-life consecutive sentences for perpetrating lewd acts

against a child is unconstitutionally disproportionate.

With respect to Petitioner's claim that the punishment was cruel and unusual in light of his

mental capacity, Petitioner did not present any evidence to the trial court for his lack of understanding or

diminished mental capacity.  To the contrary, the record shows that Petitioner knew and understood the

serious nature of his actions as he told his victims not to tell anyone about his actions because he could

go to jail if he were caught.  [Lodgment 5 at 3, 5-7].  Furthermore, at the sentencing hearing, Petitioner's

mother asked the court to put her son in prison for a long time so that he could not harm other children.

She explained that Petitioner knew his conduct was wrong and she had repeatedly urged him to not be

alone with children.  She further expressed concern over his lack of remorse and secretive manner in

doing so.  [Lodgment 5 at 16].  The court also noted that despite Petitioner's disability, lack of maturity

and judgment problems, Petitioner knew right from wrong, knew about sex, having previously been

---

[2]  538 U.S. 11 (2003).

[3]  538 U.S. 63 (2003).

married to a woman, knew about masturbation and the nature of children being children, and that he had used his disability to "charm" or befriend the children who he met through schools or other friends to lure them into his sexually deviant environment and conduct. [Lodgment 5 at 17]. Thus, Petitioner has failed to establish that his case is a unique case warranting special consideration.

Because the Court of Appeal properly applied the established Supreme Court precedent and Petitioner has failed to demonstrate special circumstances warranting departure, Petitioner's claim that his sentence violates the Eighth Amendment against cruel and unusual punishment should be **DENIED**.

*3. Conclusion*

Because Petitioner has not shown that adjudication of his claims in state court proceedings was either contrary to, or involved an unreasonable application of, clearly established Federal law nor has he shown that it was based on an unreasonable determination of the facts, his Petition should be **DENIED.**

<u>*Conclusion*</u>

For the reasons set forth above, the Court recommends that the Petition for Writ of Habeas Corpus be **DENIED**.  This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before ***December 12, 2006.***  The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before ***December 26, 2006.***  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  November 22, 2006

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

06cv1199 JM (AJB)